UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AUBREY SREDNICKI, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br>vs.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY,<br><br>                              Defendant. | No. 3:23-cv-00243<br><br>CLASS ACTION<br><br><br><br><br>DEMAND FOR JURY TRIAL<br><br> February 24, 2023 |

## CLASS ACTION COMPLAINT

Plaintiff Aubrey Srednicki, by her undersigned attorneys, alleges the following based upon her knowledge as set forth herein and upon information and belief.

### INTRODUCTION

1.      Plaintiff and putative Class Members received health benefits through group health plans issued and maintained under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1000, *et seq.* ("ERISA") by Cigna Health and Life Insurance Company and its controlled subsidiaries ("Cigna") (the "Plans").

2.      Plaintiff brings this action on behalf of herself and a Class of similarly situated persons alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* resulting from Defendant's common fraudulent and deceptive scheme to artificially inflate medical costs causing consumers to pay more than they should have paid for medically necessary services.

3.      Plaintiff Srednicki's Plan provides that she is required to pay a portion of Covered Expenses that is "Coinsurance or a Deductible." "Covered Expenses" are "Expenses" that are

the "charge for a covered service or supply." Her Explanation of Benefits ("EOB") further provides that the "Amount Billed" is "[t]he amount charged" by the healthcare provider, and that the "Discount" is "[t]he amount you save" by using a Cigna network provider because "Cigna negotiates lower rates" with "in-network" providers "to help you save money."

4.      However, as a result of Cigna's fraudulent scheme, Plaintiff Srednicki and the Class members did ***not*** save money but were overcharged for medical services. For example, on June 19, 2017, Plaintiff Srednicki obtained a blood test from Laboratory Corporation of American Holdings (doing business as "LabCorp"), an in-network provider. The cash price for this test to an uninsured customer of LabCorp was only $449.00. Incredibly, Cigna listed on the EOB that the provider was "HLTH DIAG LAB"—not the actual provider, LabCorp—and that the "Amount Billed" was an astounding $17,362.66, almost 40 times greater than the uninsured cash price. Cigna claimed on the EOB that it had provided a "Discount" of $14,572.66, over 32 times greater than the cash price, and that the "Covered Amount" for the test with a cash price of $449.00 was $2,787.00, more than 6 times greater than the cash price. Cigna further stated on the EOB that of the "Covered Amount" of $2,787.00, the Plan paid $471.02 (roughly the cash price) and Plaintiff Srednicki was required to pay an additional $2,315.98 in deductible and coinsurance payments.

5.      Upon information and belief "HLTH DIAG LAB" is a doing-business-as pseudonym for Cigna-affiliate Cigna Healthcare of Arizona, Inc.  Cigna, through yet another business name, "Cigna Medical Group," wrongfully and fraudulently "balance-billed" Plaintiff Srednicki $2,315.98. According to a statement at the bottom of its bill, Cigna Medical Group "is the medical group practice division of Cigna HealthCare of Arizona, Inc." When contacted by Plaintiff Srednicki's doctor, the actual lab provider, LabCorp, confirmed orally (but would not

do so in writing) that it had been paid *in full* by Cigna with a payment of $471.02.  LabCorp also described the charges on Cigna's fraudulent EOB as "unreasonably high," including the "Amount billed" of $17,362.66 and the supposed "Covered amount" of $2,787.00. Cigna did not disclose to Plaintiff Srednicki in its billing materials the fact that Lab Corp. had been paid in full nor did it disclose that, in fact, there was no "balance" to bill Plaintiff Srednicki.  On information and belief, LabCorp's confirmation to Plaintiff Srednicki's doctor of these facts was in violation of a "gag clause," which explains its unwillingness to confirm certain facts in writing.  In short, Cigna knew that the actual cost of Plaintiff Srednicki's blood test was no more than the $471.02 paid by the Plan, but it employed numerous fraudulent misrepresentations to conceal that fact from Plaintiff Srednicki, including a misrepresentation that the $471.02 test had a value of $17,362.66.

6.      Through this fraudulent billing scheme, Defendant and/or its agents overcharged its customers for medical services in violation of the Plans and Defendant's fiduciary duties. Under Defendant's scheme as illustrated by these actual examples, Defendant's charges were excessive and unlawful.

7.      Defendant violated the Plans and breached its fiduciary duties by secretly determining that Plaintiff must pay inflated cost-sharing payments, and secretly collecting those inflated payments from Plaintiff.

8.      As a result of Defendant's fraudulent scheme," Defendant and/or its agents overcharged Plaintiff and the other Class members for healthcare services during the Class Period (defined below). Defendant's misconduct has caused Plaintiff and the other Class members to suffer significant damages. Plaintiff seek relief as follows:

9. **Count I**: ERISA § 502(a)(1)(B) [codified at 29 U.S.C. § 1132(a)(1)(B)], provides that a participant or beneficiary may bring an action to enforce his rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan. Defendant has violated the ERISA Plans by overcharging Plaintiff.

10. **Count II**: ERISA § 406(a) [codified at 29 U.S.C. § 1106(a)], provides that a party in interest shall not receive direct or indirect compensation unless it is reasonable, and prohibits transfers of plan assets and use of plan assets by or for the benefit of fiduciaries and plan service providers. In setting the amount of and taking excessive undisclosed compensation, Defendant allowed and received unreasonable compensation and misused the assets of the ERISA Plans, including participant contributions and the Plan contracts that provided Defendant with the ability to extract these funds.

11. **Count III**: ERISA § 406(b) [codified at 29 U.S.C. § 1106(b)], provides that a fiduciary shall not deal with plan assets in its own interest or for its own account, act in any transaction involving the plan on behalf of a party whose interests are adverse to participants or beneficiaries, or receive any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan. In setting the amount of and taking compensation, Defendant set its own compensation, received plan assets and consideration for its personal accounts in violation of this provision, and was acting under other conflicts of interest.

12. **Count IV**: ERISA § 404(a)(1) [codified at 29 U.S.C. § 1104(a)(1)], provides that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, and with the care,

skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. In setting the amount of and taking excessive undisclosed compensation, Defendant has breached its fiduciary duties of loyalty and prudence. Moreover, in failing to apply Plan terms to the computation of benefits, follow the claim procedures in the Plans, or establish and maintain reasonable claim procedures, Defendant has breached its fiduciary duties of loyalty, care, prudence, and diligence.

## JURISDICTION

13.     **Subject Matter Jurisdiction.** This court has subject matter jurisdiction over this action pursuant to (a) 28 U.S.C. § 1331, which provides for federal jurisdiction over civil actions arising under the laws of the United States, including ERISA; (b) 29 U.S.C. § 1132(e)(1) providing for federal jurisdiction of actions brought under Title I of ERISA; and (c) 18 U.S.C. § 1964 providing for federal jurisdiction to prevent and restrain violations of 18 U.S.C. § 1962.

14.     **Personal Jurisdiction.** ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process. Upon information and belief, Defendant is a resident of the United States and subject to service in the United States, and this Court therefore has personal jurisdiction over it. This Court also has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(1)(A) because it would be subject to the jurisdiction of a court of general jurisdiction in Connecticut. Defendant also resides or may be found in this District or has consented to jurisdiction in this District. In any event, this Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint took place in the State of Connecticut; Defendant is authorized to do business in the State of Connecticut; Defendant conducts business in the State of Connecticut and this District; Defendant has principal executive offices and provides medical products and services in the State of Connecticut and this District;

- 5 -

Defendant advertises and promotes its services in the State of Connecticut and this District; Defendant has sufficient minimum contacts with the State of Connecticut; Defendant administers health plans from the State of Connecticut; and/or Defendant otherwise intentionally avails itself of the markets in the State of Connecticut through the marketing and sale of insurance and related products and services in this State so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15.   **Venue.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the claims herein occurred within this District, Defendant resides in this district, and/or a substantial part of property that is the subject of the action is situated in this District. Venue is also proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Defendant resides or may be found in this District and some or all of the fiduciary breaches or other violations for which relief is sought occurred in or originated in this District. Venue is also proper in this District pursuant to 18 U.S.C. § 1965, because Defendant resides, is found, has an agent, or transacts its affairs in this District, and the ends of justice require that any Defendant residing elsewhere be brought before this Court.

## PARTIES

16.   Plaintiff Srednicki is a citizen and resident of Arizona who received coverage under a group health Plan provided by an employer using a governing form plan document provided by Cigna. This Plan is an ERISA Plan that was administered, at all relevant times, by Cigna.

17.     Defendant Cigna, incorporated in Connecticut, is a wholly-owned subsidiary of Cigna Corporation with its principal place of business in Bloomfield, Connecticut.[1] Cigna underwrites life and health insurance policies. The company provides group term life, accidental death and dismemberment, dental, weekly income, and long-term disability insurance. Cigna also administers health benefits for health insurance policies it sells and health plans it administers.

## SUBSTANTIVE ALLEGATIONS

### *Background*

18.     Health Plans, including the Plans that provide for healthcare services, are paid for by a premium for a defined period or through employer plans that either provide benefits by purchasing group insurance policies or are self-funded but administered by health insurance companies and their affiliates. Premiums and contributions to coverage in all types of plans can be paid by individual plan participants or beneficiaries, employees, unions, employers or other institutions.

19.     If a Plan covers health care, the cost is often shared between the patient and the Plan. Such cost sharing can take the form of, *inter alia,* deductible payments or coinsurance payments. In general, deductibles are the dollar amounts the patient pays during the benefit

---

[1] Cigna Corporation is a global health services organization. In 2015, it reported revenue in excess of $37.9 billion, and the company is currently ranked 79th on the Fortune 500. Cigna operates through three segments: (1) Global Health Care, which is comprised of the Commercial operating segment, which encompasses both the U.S. commercial and certain international health care businesses serving employers and their employees, and other groups, and the Individuals and Government operating segment, which offers Medicare Advantage and Medicare Part D plans to seniors and Medicaid plans; (2) Global Supplemental Benefits, which offers supplemental health, life and accident insurance products in selected international markets and in the U.S.; and (3) Group Disability and Life, which provides group long-term and short-term disability, group life, accident and specialty insurance products and related services.

period (usually a year) before the Plan starts to make payments. Coinsurance generally requires a patient to pay a stated percentage of the cost of health care services.

20.     Consumers purchase health insurance and enroll in employer-sponsored health plans to protect them from unexpected high medical costs. Patients, including Plaintiff and other Class members, at a minimum, expect to pay the same prices or better than uninsured or cash-paying individuals for health care services. Otherwise, they not only would receive no benefit from their Plans, but also would, in fact, be punished for having a health plan. Therefore, Class members reasonably expect to pay less than cash-paying customers who do not have health coverage.

21.     Contractual relationships exist between the employer or individual and the health insurance company that underwrites and/or administers the Plan; the insurer/administrator and the manager, if any; and the insurer/administrator/manager and the provider. An employer or individual buys healthcare coverage from a health insurance company to provide a variety of healthcare benefits, including healthcare services.

22.     Health insurance/administrator companies, such as Cigna, may contract with and/or own managers to access the manager's provider networks. When, as in this case, the Insurer/Administrator does ***not*** use a manager, then the Insurer/Administrator contracts directly with the Provider, as Defendant did with LabCorp with regard to services provided to Plaintiff Srednicki.

23.     Pursuant to the health Plans, insurers/administrators must ensure that patients are not overcharged for their healthcare benefits.

24.     Here, Plaintiff's and Class members' cost-share routinely was higher than the price the insurer agreed to pay the provider for providing the health services.

*Plaintiff Srednicki's Experience*

25.     For example, on June 19, 2017, Plaintiff Srednicki obtained a blood test from LabCorp, an in-network provider. Cigna stated on its EOB that the Plan paid $471.02 toward the test and that there was a substantial balance due.  Plaintiff Srednicki's doctor's office contacted LabCorp and asked what it would charge one of its patients for this blood test if the patient did not have insurance.  LabCorp advised the doctor that the cash price for this test to an uninsured customer of LabCorp was even less: $449.00 (an amount that Cigna did not disclose to Plaintiff Srednicki). Yet, Cigna fraudulently listed on the EOB an "Amount Billed" of an astounding $17,362.66, almost 40 times greater than the actual cost that Cigna had negotiated or the uninsured cash price. Cigna further fraudulently listed on the EOB a "Discount" of $14,572.66, over 32 times greater than actual cost or the uninsured cash price, and a "Covered Amount" of $2,787.00, more than 6 times greater than the actual cost or the uninsured cash price. Cigna further fraudulently stated on the EOB that of the "Covered Amount" of $2,787.00, Plaintiff Srednicki was required to pay Cigna an $2,315.98 in deductible and/or coinsurance payments.

26.     Cigna, through an entity called "Cigna Medical Group," knowingly, wrongfully and fraudulently billed Plaintiff Srednicki $2,315.98, even though the actual provider, LabCorp, has confirmed that it was ***paid in full*** for the actual cost of no more than $558.40 for the blood test.

27.     Upon information and belief, Cigna implemented this fraudulent billing scheme through a Cigna captive provider organization, Cigna HealthCare of Arizona, Inc. Although Plaintiff Srednicki received services from LabCorp, the EOB states that the provider to Cigna was Cigna's own "HLTH DIAG LAB." The bill from Cigna Medical Group in turn states that Cigna Medical Group "is the medical group practice division of Cigna HealthCare of Arizona,

Inc." The bill also purports to explain the relationship between LabCorp and Cigna Medical Group as follows: "You are receiving this statement for medical or laboratory services at [Cigna Medical Group] facilities, including laboratory services provided at a LabCorp draw station under LabCorp's agreement with Cigna HealthCare of Arizona, Inc. for laboratory management and support services."

28.     Upon information and belief, Cigna implemented the scheme by requiring LabCorp to bill Cigna the actual cost of the blood test, no more than $558.40. Cigna then used Health Diagnostics Lab to create a fictitious invoice to Cigna by billing itself $17,343.99 to generate a wildly inflated "Amount Billed." Cigna then generated a fictitious and wildly inflated "Discount" by reducing the fraudulent "Amount Billed" by $14,572.66 to generate a wildly inflated fictitious "Covered Amount" of $2,787.00. These fictitious amounts were then included on a fraudulent invoice, prepared by Cigna Medical Group, and sent through interstate mail to Plaintiff Srednicki and demanding a fraudulent payment to Cigna Medical Group in the amount of $2,315.98.

29.     Upon information and belief: (1) Cigna developed and directed the fraudulent billing scheme through its Plans; and (2) Cigna charged patients excessive and unlawful cost sharing payments.

30.     Upon information and belief, these unlawful activities have affected thousands of participants. The losses to date are significant, particularly given that Defendant's market is with ERISA-covered health plans—plans whose participants and beneficiaries are owed the highest duties known to law by the fiduciaries that administer and manage these important employee benefits.

*Plaintiff Srednicki's Plan*

31.     Plaintiff Srednicki's Plan provides that "Covered Expenses are Medically Necessary Expenses" for "services or supplies." "Expenses" are the "charge for a covered service or supply."

32.     The "Deductible" is the amount of Covered Expenses" that must be paid before the Plan pays those expenses. "Coinsurance" means the "percentage of Covered Expenses that a Covered Person is required to pay."

33.     Plaintiff Srednicki's Explanation of Benefits ("EOB") further defines these terms. It provides that the "Amount Billed" is "[t]he amount charged" by the healthcare provider, and that the "Discount" is "[t]he amount you save" by using a Cigna network provider because "Cigna negotiates lower rates" with "in-network" providers "to help you save money."

*Defendant Is a Fiduciary and Party In Interest*

34.     Plaintiff and the members of the Class (as defined below) are participants in employee welfare benefit plans as that term is defined in 29 U.S.C. § 1002(1)(A), insured or administered by Defendant to provide participants with medical care.

35.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

36.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or

- 11 -

other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). This is a functional test. Neither "named fiduciary" status nor formal delegation is required for a finding of fiduciary status, and contractual agreements cannot override finding fiduciary status when the statutory test is met.

37.     In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes the duty to monitor that appointee to protect the interests of the ERISA Plans and their participants. The power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power. An appointing fiduciary must take prudent and reasonable action to determine whether the appointees are fulfilling their own separate fiduciary obligations.

38.     Defendant is a fiduciary of all of the Class members' ERISA Plans to which it provided health benefits or for which it administered such benefits in that it *exercised* discretionary authority or control respecting the following plan management activities, ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and in that it *had* discretionary authority or discretionary responsibility in the administration of the ERISA Plans of participants and beneficiaries in the Class, ERISA § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

39.     Moreover, the Plans expressly granted Cigna broad discretionary authority under the Plans, including the authority to determine benefit payments.

40.     In addition to its fiduciary status under the foregoing provisions, Defendant is a fiduciary of all of the Class members' ERISA Plans in that it *exercised* authority or control

respecting management or disposition of plan assets, ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), because:

        (a)     The insurance policies, ASO agreements and other contracts underpinning the Plans are "plan assets" within the meaning of ERISA;

        (b)     Through its fraudulent billing scheme as described above, Defendant exercised control over the contracts underpinning the ERISA Plans. Cigna successfully leveraged its relationships to the Class members' ERISA Plans to benefit itself, its affiliates, and third parties, and its *authority or control* over these significant plan assets enabled it to do so.

41.     In addition, any Plan-paid amounts that were contributed to participant healthcare services transactions were "plan assets" within the meaning of ERISA. Incident to its fraudulent billing scheme, Defendant also exercised control over these plan assets, making it a fiduciary for purposes of these transactions.

42.     Defendant is also a fiduciary because it exercised discretion to set the prices that the Class members were and are required to pay for their healthcare services. Defendant is required to act in the best interests of the Class, but by allowing participants and beneficiaries of ERISA Plans to be subject to the fraudulent billing scheme described herein, Defendant has breached its fiduciary duties.

43.     Defendant is aware of the effect the fraudulent billing scheme has had on the Class. Nevertheless, Defendant has maximized its revenues at the expense of the Class by engaging in the illegal conduct described herein.

44.     Furthermore, in negotiating and entering into a contract on behalf of an ERISA plan, a fiduciary must act prudently and negotiate terms that are reasonable and in the best

interests of plan participants. In these negotiations and in the contract that is ultimately agreed upon, a fiduciary cannot place its interests over the interests of the plan participants and beneficiaries. To the extent Defendant has negotiated agreements subject to the fraudulent billing scheme described herein, it has breached its fiduciary duties under ERISA. And through these negotiations, Defendant has also exercised discretionary authority by setting its own margins and compensation for the sale of healthcare services.

45.     Defendant is also a party in interest under ERISA because (a) it is a fiduciary, ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A); and/or (b) it provided insurance, plan administration, and healthcare management services to Plaintiff's and the Class members' health plans, ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

46.     As a party in interest, Defendant received direct and indirect compensation for services, some of which was in the form of excess amounts that was collected in exchange for few to no services. Defendant also received and used for its own and its affiliates' benefits "plan assets," including patient cost-sharing and ERISA Plan contracts under which it had access to the ERISA Plans and were able to impose its fraudulent billing scheme on the Class.

### *Defendant's ERISA Duties*

47.     **The Statutory Requirements:** ERISA imposes strict fiduciary duties upon plan fiduciaries. ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefit to participants and their beneficiaries; and defraying reasonable expenses of administering the plan; with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims; . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

48. **The Duty of Loyalty.** ERISA imposes on a plan fiduciary the duty of loyalty—that is, the duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries . . . ." The duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

49. **The Duty of Prudence.** Section 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence—that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ."

50. **The Duty to Inform.** The duties of loyalty and prudence include the duty to disclose and inform. These duties entail: (a) a negative duty not to misinform; (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (c) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

51. **Prohibited Transactions.** ERISA's prohibited transaction rules bar fiduciaries from certain acts because they are self-interested or conflicted and therefore become per se violations of ERISA § 406(b)—or because they are improper "party in interest" transactions under ERISA § 406(a). As noted above, under ERISA, a "party in interest" includes a fiduciary, as well as entities providing any "services" to a plan, among others. *See* ERISA § 3(14), 29

U.S.C. § 1002(14). ERISA's prohibited transaction rules are closely related to ERISA's duties of loyalty, which are discussed above.

52.     ERISA § 406(a) provides that transactions between a plan and a party in interest are prohibited transactions unless they are exempted under ERISA § 408:

> (a) Transactions between plan and party in interest
>
> Except as provided in section 1108 of this title:
>
> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> (B) lending of money or other extension of credit between the plan and a party in interest;
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a).

53.     ERISA § 406(b) provides:

> A fiduciary with respect to a plan shall not—
>
> (1) deal with the assets of the plan in his own interest or for his own account,
> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).

54.     **The Duty to Monitor.** In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes

the duty to monitor that appointee to protect the interests of the ERISA participants and beneficiaries. As noted above, the power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power.

55.   **Rights of Action Under the Plans, for Fiduciary Breach, Prohibited Transactions, and Related Claims.** ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to enforce rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan. Further, ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes individual participants and fiduciaries to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The remedies available pursuant to § 502(a)(3) include remedies for breaches of the fiduciary duties set forth in ERISA § 404, 29 U.S.C. § 1104, and for violation of the prohibited transaction rules set forth in ERISA § 406, 29 U.S.C. § 1106. Further, ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate. Plaintiff brings her ERISA claims pursuant to ERISA § 502(a)(3) and (2), as well as § 502(a)(1)(B), as further set forth below,

because not all the remedies Plaintiff seeks are available under all sections of ERISA and, alternatively, Plaintiff is pleading her claims in the alternative.

### *Defendant Breached Its Duties*

56.     Defendant breached the terms of the ERISA Plans and legal obligations, committed breaches of fiduciary duty and prohibited transactions, and harmed Plaintiff and Class members in the following ways:

(a)     Plaintiff and Class members were unlawfully charged amounts for healthcare services that substantially exceeded the amounts actually paid by or agreed to be paid by Defendant to the providers for the services;

(b)     Plaintiff and Class members were overcharged for coinsurance payments in that rather than paying a percentage of the fees that Defendant actually paid (or agreed to pay) to the providers for the services, the coinsurance payments were based on substantially inflated amounts;

(c)     Plaintiff and Class members were overcharged when making payments toward their deductibles in that rather than paying the lesser of the applicable per occurrence deductible fee or the fee paid to the provider for the healthcare service, Plaintiff and Class members were charged deductible fees that were higher than allowed under the Plans;

(d)     Defendant failed to apply Plan terms in the computation of benefits and otherwise improperly processed and paid claims it received from providers;

(e)     Defendant misrepresented and failed to disclose to patients the manner in which it charged for healthcare services as alleged above and otherwise failed to establish and maintain reasonable claim procedures;

(f)      Providers were prohibited from disclosing to patients the existence or amount of its compensation which, among other things, is an unreasonable claim procedure;

(g)      Defendant set its own compensation for services performed as fiduciaries by dictating prices, co-payments, co-insurance, deductibles, and contracted rates;

(h)      Defendant unilaterally collected its own compensation for services performed as fiduciaries;

(i)      Defendant maximized its own profits, profits to its affiliates, and profits to third parties, at the expense of the Class members;

(j)      Defendant received improper compensation from entities doing business with the ERISA Plans that Defendant administered and managed;

(k)      Defendant knew or reasonably should have known that its actions would injure plan participants and beneficiaries;

(l)      Defendant failed to stop injuries to Plan participants caused by their co-fiduciaries and service providers; and

(m)      Defendant failed to monitor its appointees, formal delegatees, and informal designees in the performance of their fiduciary duties.

57.      Plaintiff and Class members were overcharged for and/or paid unauthorized and excessive coinsurance and deductible payments in connection with the purchase of numerous different types of healthcare services.

## CLASS ACTION ALLEGATIONS

58.      Plaintiff brings this action as a class action pursuant to Rule 23 (b)(1) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the Class, defined as follows:

All individuals who were or are enrolled in an employee welfare benefit plan that is insured by and/or for which Cigna administers claims for benefits and is established and maintained under ERISA, who received laboratory services from LabCorp and/or Sonora Quest through Cigna HealthCare of Arizona, Inc., Cigna Medical Group, or Health Diagnostic Laboratory, on or after October 7, 2011, and whose Cost Share for such services was greater than the amount they would have owed had their cost-sharing responsibility been based on the amount paid by Cigna HealthCare of Arizona, Inc., Cigna Medical Group, or Health Diagnostic Laboratory to LabCorp and/or Sonora Quest for those services.

Excluded from the Settlement Class are: (1) any of Cigna's officers or directors; (2) the judicial officers to whom this case is assigned and any members of their staffs and immediate families; (3) any heirs, assigns, or successors of any of the persons or entities described in parts (1) and (2) of this paragraph; and (4) anyone who opts-out of the Settlement

59.     Plaintiff reserves the right to redefine the Class prior to certification.

60.     **Class Period.** Plaintiff will seek class certification, losses, and other available relief for ERISA violations occurring within the entire period allowable under ERISA § 413, 29 U.S.C. § 1113, including its fraud or concealment tolling provisions.

61.     This action is brought, and may properly be maintained, as a Class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, typicality, adequacy, predominance, and superiority requirements of those provisions.

62.     The Class are so numerous that the individual joinder of all of its members is impracticable. On information and belief, Plaintiff believes that the total number of Class members is in the thousands.

63.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff's claims, and the claims of all Class members arise out of the same conduct, policies and practices of Defendant as alleged herein, and all members of the Class are similarly affected by Defendant's wrongful conduct.

64.     There are questions of law and fact common to the Class and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

(a)     Whether Defendant is a fiduciary under ERISA;

(b)     Whether Defendant is a party in interest under ERISA;

(c)     Whether Defendant breached its fiduciary duties in failing to comply with ERISA as set forth above;

(d)     Whether Defendant acts as alleged above breached ERISA's prohibited transaction rules;

(e)     Whether Defendant violated the Plans' terms by collecting unlawfully excessive amounts for healthcare services, and retaining the excess amounts;

(f)     Whether the members of the Class have sustained losses and/or damages and the proper measure of such losses and/or damages; and

(g)     Whether the members of the Class are entitled to declaratory and/or injunctive relief.

65.     Plaintiff will fairly and adequately represent the Class and has retained counsel experienced and competent in the prosecution of class action litigation. Plaintiff has no interests antagonistic to those of other members of the Class. Plaintiff is committed to the vigorous prosecution of this action and anticipates no difficulty in the management of this litigation as a class action.

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and

burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

67.     Class action status in this action is warranted under Rule 23(b)(1) because there is a risk of inconsistent rulings establishing incompatible standards of conduct for Defendant in the absence of Class certification.

68.     Class action status in this action is warranted under Rule 23(b)(3) because questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and class action treatment is superior to the other available methods for the fair and efficient adjudication of this controversy. Joinder of all members of the Class is impracticable.

**Plaintiff and the Class Are Entitled to Tolling Due to Fraud or Concealment**

69.     By its nature, Defendant's fraudulent billing scheme has hidden their unlawful conduct from injured parties.

70.     Neither Plaintiff nor Class members knew of the fraudulent billing scheme nor could they have easily or reasonably discovered the existence of the fraudulent billing scheme until shortly before filing the administrative appeal and this action.

71.     To the extent that any of the causes of action alleged *infra* are subject to a specific statute of limitations, Defendant's fraud or concealment alleged herein *tolls* those requirements, for a specific amount of time to be determined as the litigation progresses.

72.     Further, ERISA's statute of limitations for fiduciary breach claims, ERISA § 413, 29 U.S.C. § 1113, provides that "in the case of fraud or concealment, [an] action may be commenced not later than six years after the date of discovery of such breach or violation."

## COUNT I

### ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

73.     Plaintiff incorporates by reference each and every allegation above as if set forth fully herein.

74.     ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides that a participant or beneficiary may bring an action to enforce rights under the terms of the plan or to clarify his rights to future benefits under the terms of the plan.

75.     As set forth above, as a result of being overcharged for healthcare services, Plaintiff and the Class have been denied their rights under the Plans to be charged a lower amount for these services.

76.     Plaintiff and the Class have been damaged in the amount that Defendant wrongfully took for itself. Plaintiff and the Class are entitled to recover the amounts they have been overcharged.

77.     Plaintiff and the Class are entitled to enforce their rights under the terms of the plans and seek clarification of their future rights and are entitled to an order providing, among other things:

   (a)     That they have been overcharged;

   (b)     For an accounting of Defendant's charges and overcharges;

   (c)     For payment of all amounts due them in accordance with their rights under the ERISA Plans;

   (d)     For readjudication of the claims on which they were overcharged; and

   (e)     For an order that they are entitled in the future not to pay "amounts that conflict with their rights under the ERISA Plans.

- 23 -

## COUNT II

### ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)
### for Violations of ERISA § 406(a)(1)(C) & (D), 29 U.S.C. § 1106(a)(1)(C) & (D)

78.     Plaintiff incorporates by reference each and every allegation above as if set forth fully herein.

79.     ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), provides that a fiduciary shall not cause a plan to engage in a transaction if it knows or should know that the transaction constitutes the payment of direct or indirect compensation in the furnishing of services by a party in interest to a plan.

80.     ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), provides that a fiduciary shall not cause a plan to engage in a transaction if it knows or should know that the transaction constitutes the transfer to, or use by or for the benefit of a party in interest, of any assets of the plan.

81.     As alleged above, Defendant is a fiduciary of the ERISA Plans of the participants and beneficiaries in the Class. Defendant is also a party in interest under ERISA in that it is a fiduciary and/or it provided health insurance and/or administrative "services" to Class members pursuant to the ERISA Plans. ERISA § 3(14)(A) & (B), 29 U.S.C. § 1002(14)(A) & (B). Thus it was engaged on one or both sides of these § 406(a) prohibited transactions.

82.     As a fiduciary, Defendant caused the ERISA Plans to engage in prohibited transactions as alleged herein.

83.     As a party in interest, Defendant received direct and indirect compensation in the form of undisclosed compensation in exchange for the services it provided to Plaintiff and the Class pursuant to their health plans. ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C).

84.    The only exception to the prohibition of such compensation is if it was for services necessary for the operation of a plan and such compensation was reasonable. ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2).

85.    While the burden is on Defendant to invoke and establish this exception, the compensation paid to Defendant was not reasonable under ERISA § 408(b)(2), 29 U.S.C. § 1108(b)(2) in that the compensation was excessive and/or unreasonable in relation to the value of the services provided. Defendant's compensation exceeded the premiums and other fees that were agreed upon for fully providing healthcare services. Further, Defendant as a fiduciary of the ERISA Plans is entitled to receive at most reimbursement for their direct expenses.

86.    Defendant also received transfers of plan assets by collecting and retaining the difference between those payments and the amount it paid the providers. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

87.    In addition, and in the alternative, Defendant used—and misused—assets of the ERISA Plans by leveraging the contracts underpinning these ERISA Plans to gain access to patients who needed healthcare services and would be required to pay, *inter alia,* coinsurance or deductible payments which Defendant could appropriate in its fraudulent billing scheme. Further, Defendant used—and misused—for its own benefit and the benefit of other parties in interest additional assets of the ERISA Plans—the contracts underpinning the ERISA Plans of members of the Class—to effectuate its fraudulent billing scheme. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

88.    Plaintiff and the Class have suffered losses and/or damages and/or Defendant has been unjustly enriched in the amount of the compensation Defendant wrongfully took for itself.

89.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

90.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to Plaintiff and the Class, including but not limited to:

        (a)     an accounting;

        (b)     a surcharge;

        (c)     readjudication of the claims on which they were overcharged;

        (d)     disgorgement of profits;

        (e)     an equitable lien;

        (f)     a constructive trust;

        (g)     restitution;

        (h)     full disclosure of the foregoing acts and practices;

        (i)     an injunction against further violations; and/or

        (j)     any other remedy the Court deems proper.

### COUNT III

**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**
**for Violations of ERISA § 406(b), 29 U.S.C. § 1106(b)**

91.     Plaintiff incorporates by reference each and every allegation above as if set forth fully herein.

92.     ERISA § 406(b), 29 U.S.C. § 1106(b), provides that a fiduciary shall not (1) deal with plan assets in its own interest or for its own account, (2) act in any transaction involving the plan on behalf of a party whose interests are adverse to participants or beneficiaries, or (3) receive

any consideration for its own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

93.     As alleged above, Defendant is a fiduciary to the ERISA Plans. It violated ERISA § 406(b)(1) and (3).

94.     As alleged above, the contracts underpinning the Plaintiff's and the Class members' ERISA Plans are plan assets under ERISA.

95.     First, by managing contracts in their own interest or for their own account, Defendant violated ERISA § 406(b)(1). Specifically, in setting the amount of and taking excessive undisclosed compensation, Defendant received plan assets and consideration for its personal accounts.

96.     Second, through its fraudulent billing scheme, Defendant received consideration for its own personal accounts from other parties—including Plaintiff and members of the Class— that were dealing with the ERISA Plans in connection with a transaction involving the assets of the ERISA Plans.

97.     Plaintiff and the Class have been damaged and suffered losses in the amount of the  compensation Defendant took through these prohibited transactions.

98.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

99.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to Plaintiff and the Class, including but not limited to:

(a)     an accounting;

- 27 -

(b)     a surcharge;

(c)     readjudication of the claims on which they were overcharged;

(d)     correction of the transactions;

(e)     disgorgement of profits;

(f)     an equitable lien;

(g)     a constructive trust;

(h)     restitution;

(i)     full disclosure of the foregoing acts and practices;

(j)     an injunction against further violations; and/or

(k)     any other remedy the Court deems proper.

## COUNT IV

### ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3) for Violations of ERISA § 404, 29 U.S.C. § 1104

100.    Plaintiff incorporates by reference each and every allegation above as if set forth fully herein.

101.    ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides that a fiduciary shall discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries and defraying reasonable expenses of administering the plan, and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

102.    In setting the amount of and taking excessive undisclosed compensation Defendant has breached its fiduciary duties of loyalty and prudence.

103.    Further, in failing to put the interests of participants and beneficiaries first in managing and administering Plan benefits, Defendant has breached its fiduciary duty of loyalty. And in acting in its own self-interest, Defendant has violated the "exclusive purpose" standard.

104.    The duty to disclose is part of the duty of loyalty. In concealing and failing to disclose to Plaintiff and the Class that plan participants were paying more in than the cost of the healthcare service if purchased outside their respective Plans, and then barring providers from advising Class members that they could pay less for a service by purchasing it outside of their respective plans, Defendant breached this duty. Further, both omissions and misrepresentations are actionable under ERISA's disclosure obligations, and the type that occurred here are not subject to individualized reliance requirements. In addition, a fiduciary that appoints another person to fulfill all or part of its duties, by formal or informal hiring, subcontracting, or delegation, assumes the duty to monitor that appointee to protect the interests of the ERISA participants and beneficiaries. As noted herein, the power to appoint, retain, and remove plan fiduciaries or service providers confers fiduciary status upon the person holding such power.

105.    Defendant further breached its fiduciary duties by failing to apply Plan terms to the computation of benefits and misrepresenting that it would set cost-shares based on provider charges when it did not even have access to such information or had such information and ignored it.

106.    Defendant further breached its fiduciary duties by failing to follow the claim procedures set forth in the Plans and failing to establish and maintain reasonable claim procedures.

107.    Finally, it is never prudent to require or allow excessive compensation in the context of an ERISA-covered plan. In so doing, Defendant violated its duty of prudence.

108.    Plaintiff and the Class have been damaged and suffered losses in the amount of the compensation Defendant wrongfully took.

109.    ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach and to restore to the plan any profits the fiduciary made through use of the plan's assets. ERISA § 409 further provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.

110.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under ERISA § 409.

111.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

112.    Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Court should order equitable relief to Plaintiff and the Class, including but not limited to:

      (a)     an accounting;

      (b)     a surcharge;

      (c)     readjudication of the claims on which they were overcharged;

      (d)     correction of the transactions;

      (e)     disgorgement of profits;

      (f)     an equitable lien;

      (g)     a constructive trust;

(h)     restitution;

(i)     full disclosure of the foregoing acts and practices;

(j)     an injunction against further violations; and/or

(k)     any other remedy the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief as follows as applicable for the particular claim:

A.     Certifying this action as a class action and appointing Plaintiff and the counsel listed below to represent the Class;

B.     Finding that Defendant is a fiduciary and/or a party in interest as defined by ERISA;

C.     Finding that Defendant violated its fiduciary duties of loyalty and prudence Class members and awarding Plaintiff and the Class such relief as the Court deems proper;

D.     Finding that Defendant engaged in prohibited transactions and awarding Plaintiff and the Class such relief as the Court deems proper;

E.     Finding that Defendant denied Plaintiff and the Class benefits and their rights under the policies and awarding such relief as the Court deems proper;

F.     Enjoining Defendant from further such violations;

G.     Finding that Plaintiff and the Class are entitled to clarification of their rights under the Plans and awarding such relief as the Court deems proper;

H.     Awarding Plaintiff and the Class damages, surcharge, and/or other monetary compensation as deemed appropriate by the Court;

I.      Ordering Defendant to restore all losses to Plaintiff and the Class and disgorge unjust profits and/or other assets of the Plans;

J.      Adopting the measure of losses and disgorgement of unjust profits most advantageous to Plaintiff and the Class to restore Plaintiff's losses, remedy Defendant's windfalls, and put Plaintiff in the position that she would have been in if the fiduciaries of the ERISA Plans had not breached it duties or committed prohibited transactions;

K.      Ordering other such remedial relief as may be appropriate under ERISA, including the permanent removal of Defendant from any positions of trust with respect to the ERISA Plans of the members of the Class and the appointment of independent fiduciaries to serve in the roles Defendant occupied with respect to the ERISA Plans of the Class;

L.      Awarding Plaintiff and the Class equitable relief to the extent permitted by the above claims;

M.      Awarding Plaintiff's counsel attorneys' fees, litigation expenses, expert witness fees and other costs pursuant to ERISA § 502(g)(1), 29 U.S.C. 1132(g)(1), and/or the common fund doctrine;

N.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

O.      Awarding such other and further relief as may be just and proper, including pre-judgment and post-judgment interest on the above amounts.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated:  February 24, 2023                          */s/ Robert A. Izard*
                                       _____
                                       Robert A. Izard (ct01601)
                                       Craig A. Raabe (ct04116)
                                       Christopher M. Barrett (ct30151)
                                       Seth R. Klein (ct18121)
                                       **IZARD, KINDALL & RAABE, LLP**
                                       29 South Main Street, Suite 305
                                       West Hartford, CT 06107
                                       Telephone: 860-493-6292
                                       Facsimile: 860-493-6290
                                       rizard@ikrlaw.com
                                       craabe@ikrlaw.com
                                       cbarrett@ikrlaw.com
                                       sklein@ikrlaw.com

                                       William H. Narwold (ct00133)
                                       **MOTLEY RICE LLC**
                                       One Corporate Center
                                       20 Church Street, 17th Floor
                                       Hartford, CT 06103
                                       Telephone: 860-882-1681
                                       Facsimile: 860-882-1682
                                       bnarwold@motleyrice.com
                                       mjasinski@motleyrice.com